UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
COLLEEN EDWARDS,

                           Plaintiff,

    - against -                     **OPINION & ORDER**

ESSAM KHALIL, individually,          No. 18-CV-5138 (CS)
RAMON BETHENCOURT, individually,
and THE CITY OF MIDDLETOWN,
NEW YORK,

                         Defendants.
-------------------------------------------------------------x

<u>Appearances</u>:

Drita Nicaj
Law Offices of Drita Nicaj
Poughkeepsie, New York
*Counsel for Plaintiff*

Alex Smith
Corporation Counsel of the City of Middletown
Middletown, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

       Before the Court is Defendants' Motion to Dismiss the Complaint of Plaintiff Colleen

Edwards.  (ECF No. 46.)  For the following reasons, Defendants' motion is GRANTED.

**I.**       **BACKGROUND**

       I accept as true the facts, but not the conclusions, set forth in Plaintiff's Complaint.  (ECF

No. 1 ("Compl.").)  The parties' knowledge of the factual and procedural background of this case

– including the allegations in and history of the parties' previous case, *Edwards v. Khalil*, No.

12-CV-8442 (S.D.N.Y.) ("*Edwards I*"), discussed herein – is presumed.  I recite only those facts from this case and *Edwards I*[1] relevant to this opinion.

### A.    Facts

Plaintiff began her employment with the City of Middletown Police Department (the "Department") in October 2007.  (ECF No. 1-1, ("*Edwards I* Compl.") ¶¶ 3, 11.)  During her employment, Plaintiff was one of the only female members of the Department.  (*See id.* ¶ 11.)  In 2008, Defendant Essam Khalil, a fellow officer, made sexual advances towards her.  (*Id.* ¶ 12.)  Plaintiff rejected Khalil's advances and subsequently distanced herself.  (*Id.*)  Khalil, therefore, allegedly "harbored animus towards Plaintiff."  (*Id.*)

Ramon Bethencourt, the Acting Police Chief in 2010, was close friends with Khalil, and the two were also business partners.  (*Id.* ¶¶ 5, 13; Compl. ¶ 5.)  As Acting Police Chief, Bethencourt promoted Khalil to Sergeant.  (*Edwards I* Compl. ¶ 13.)  Shortly after Khalil's promotion, he began targeting Plaintiff professionally.  (*Id.* ¶ 14.)  For example, in or about summer or fall 2010, Khalil allegedly shared "so-called confidential information" with other members of the Department about discipline of Plaintiff.  (*Id.* ¶ 19; *see id.* ¶¶ 15-18.)  On another occasion, Khalil allegedly ordered Plaintiff to "mark off the arrest box" on a form, contrary to a Lieutenant's instructions to Plaintiff to leave the box blank "when there were no arrests."  (*Id.* ¶ 21.)  Further, on a tour that lasted from 4:00 p.m. on October 30 to the early morning hours of October 31, 2011, Khalil allegedly "berated Plaintiff" and made "her cry in front of a suspect," after which Plaintiff complained to a Lieutenant about Khalil's "ongoing harassing,

---

[1] Plaintiff included her *Edwards I* Complaint as an exhibit to her Complaint in this action, (ECF No. 1-1), and incorporates it here, meaning I can consider the allegations in that Complaint on this motion to dismiss.  *See Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (cleaned up).

discriminating and demeaning behavior." (*Id.* at ¶ 42.) Khalil, for his part, claimed Plaintiff was insubordinate. This incident resulted in an internal investigation into Plaintiff's conduct. (*Id.* ¶ 44.)

On or about November 19, 2012, Plaintiff filed the *Edwards I* Complaint, claiming violations of her rights under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; Title VII, 42 U.S.C. § 2000e *et seq.*; and the New York State Executive Law § 296. (Compl. ¶ 7.) In the *Edwards I* Complaint, Plaintiff detailed facts pertaining to her gender discrimination and retaliation claims. (*Id.*) The *Edwards I* trial was "slated" to begin on October 24, 2016. (*Id.* ¶ 13.) About two months before, however, Defendants made a Rule 68 Offer of Judgment. (*Id.*) Plaintiff accepted the Defendants' offer on or about September 8, 2016, and the court entered judgment on September 12, 2016. (*Id.*)

Over the course of Plaintiff's employment, three disciplinary hearings – all seeking to terminate her on grounds of misconduct and insubordination – took place. (*See id.* ¶ 8.) The first disciplinary hearing lasted seven days, and on November 8, 2012, the Board of Police Commissioners ("Board" or "Commission") found Plaintiff guilty of charges of insubordination relating to the incident on October 31, 2011 and terminated her employment. (*Id.* ¶¶ 9-10.) On November 19, 2012, Plaintiff challenged her termination by filing an Article 78 petition in the Supreme Court of the State of New York, County of Orange. (*Id.* ¶ 10.) "[T]he state court reinstated Plaintiff's employment and annulled the Board's decision" on April 9, 2013. (*Id.*)[2] Thereafter, Bethencourt issued additional disciplinary charges relating to the October 31, 2011 incident, as well as new charges pertaining "to Plaintiff's request to receive overtime pay for two

---

[2] The termination was annulled because one day of the hearing was held on a Sunday, in violation of New York law; the court did not reach Plaintiff's substantive objections to her termination. *See Edwards v. City of Middletown*, 965 N.Y.S.2d 808, 811 (Sup. Ct. 2013).

dates in which she was required to attend the first disciplinary proceeding." (*Id.* ¶ 11.)  The second disciplinary hearing was terminated for unstated reasons after two days of hearings in April and May 2014.  (*Id.* ¶ 11.)  The third disciplinary hearing spanned twenty-two days between November 12, 2014 and August 17, 2016.  (*Id.* ¶ 12.)  On December 16, 2016, "the Board found Plaintiff guilty of most [of] the disciplinary charges, and terminated her position effective immediately."  (*Id.* ¶ 14.)

Plaintiff challenged the termination by filing another Article 78 petition (the "Petition") in Orange County Supreme Court.  (*Id.* ¶ 15.)  In her Petition, Plaintiff alleged that the Board's "determination was arbitrary and capricious, affected by error of law," and "not supported by substantial evidence," and that the penalty imposed was "shocking to the conscience and excessive."  (ECF No. 47-5 at 38.)  The Petition attached the *Edwards I* Complaint as an Exhibit, (*id.* ¶ 40), and detailed alleged acts of gender discrimination and retaliation on Khalil's part, (*see id*. ¶¶ 4, 76, 78-82, 87-92, 102-106).  Plaintiff claimed, among other things, that the Board in its decision to terminate had not given adequate consideration or weight to the personal conflict between Khalil and Plaintiff and his targeting of her.  (*Id.* ¶ 195.)

On November 6, 2017, the state court "issued a Decision and Judgment dismissing Plaintiff's Article 78 petition."  (Compl. ¶ 15; *see* ECF No. 47-6.)  The court found, among other things, that the penalty of termination was not so disproportionate as to shock one's sense of fairness, and thus the Board did not abuse its discretion in terminating Plaintiff.  (ECF No. 47-6 at 15.)  Plaintiff appealed the court's decision in May 2018, (Compl. ¶ 16), and the Appellate Division affirmed it earlier this year.  *See Edwards v. City of Middletown*, 141 N.Y.S.3d 103 (App. Div. 2021).

### B.    Procedural History

On June 8, 2018, Plaintiff commenced this suit, alleging:  (1) violation of Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment under 42 U.S.C. § 1983 against all Defendants; (2) violation of Plaintiff's right to a workplace free from discrimination based upon sex pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, against the City of Middletown; (3) violation of Plaintiff's right to be free from retaliation for opposing discrimination in the workplace based upon gender pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, against the City of Middletown; (4) violation of Plaintiff's right to be free from discrimination on the basis of gender pursuant to § 296 of the Executive Law of the State of New York against Defendants Khalil and the City of Middletown; and (5) violation of Plaintiff's right to be free from retaliation for opposing discrimination in the workplace based upon gender pursuant to § 296 of the Executive Law of the State of New York against all Defendants.  (Compl. ¶¶ 18-27.)  The instant action "is limited to tangible and intangible damages [Plaintiff] suffered following" her December 16, 2016 termination of employment.  (*Id.* ¶ 14 n.1.)  On March 4, 2021, the Court held a pre-motion conference to discuss Defendants' anticipated motion to dismiss, (Minute Entry dated Mar. 4, 2021), and this motion followed, (ECF No. 46).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss on Grounds of Preclusion

A motion to dismiss on grounds of preclusion is treated as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), not as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1).  *See Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up).

**B.**     **Documents Considered on a Motion to Dismiss**

When deciding a motion to dismiss, a court is entitled to consider:

>  (1) facts alleged in the complaint and documents attached to it or incorporated in
>  it by reference, (2) documents integral to the complaint and relied upon in it,
>  even if not attached or incorporated by reference, (3) documents or information
>  contained in defendant's motion papers if plaintiff has knowledge or possession
>  of the material and relied on it in framing the complaint . . . , and (5) facts of
>  which judicial notice may properly be taken under Rule 201 of the Federal Rules
>  of Evidence.

*Weiss*, 762 F. Supp. 2d at 567 (cleaned up).  "To be incorporated by reference, the complaint

must make a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT*

*Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (cleaned up).  "A document is integral to the

complaint where the complaint relies heavily upon its terms and effect."  *Goel v. Bunge, Ltd.*,

820 F.3d 554, 559 (2d Cir. 2016) (cleaned up).  "Merely mentioning a document in the complaint

will not satisfy this standard; indeed, even offering limited quotations from the document is not

enough."  *Id.* (cleaned up).

A court may take judicial notice of public records such as pleadings, orders, judgments,

and other documents from prior litigation, including state court cases.  *Jianjun Lou v. Trutex,*

*Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012); *see Gertskis v. E.E.O.C.*, No. 11-CV-5830,

2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) ("A district court reviewing a motion to

dismiss may also consider documents of which it may take judicial notice, including pleadings

and prior decisions in related lawsuits.").  When a court takes judicial notice of a document on a

motion to dismiss, it should generally do so only "to determine what statements the documents

contain, not for the truth of the matters asserted."  *Schubert v. City of Rye*, 775 F. Supp. 2d 689,

698 (S.D.N.Y. 2011) (cleaned up).[3]

---

[3] Defendants attached six documents as exhibits to their attorney's declaration, (ECF No. 47), in support of their Motion to Dismiss:  (1) a copy of Plaintiff's Complaint (ECF No. 47-1); (2) a copy of the Middletown Police Commission's Decision and Determination, dated December 16, 2016 (ECF No. 47-2); (3) a copy of the Defendants' Rule 68 Offer of Judgment in

III.    __DISCUSSION__

In bringing this case, Plaintiff seeks damages resulting from her termination, but not for the underlying acts of discrimination, harassment, and retaliation, which were the subject of *Edwards I*.  Her burden in the instant case, therefore, is to show that the gender discrimination, sexual harassment, and retaliation of which she complains were the proximate cause of that termination.  Defendants move to dismiss on the grounds that Plaintiff's claims are barred by collateral estoppel, also known as issue preclusion, because the merits of these claims were already litigated in Plaintiff's Article 78 proceeding and decided against her.  (ECF No. 48, ("Ds' Mem.") at 5-6, 10.)[4]

---

*Edwards I*, dated August 26, 2016 (ECF No. 47-3); (4) a copy of the *Edwards I* Judgment, so-ordered by Magistrate Judge Judith C. McCarthy, dated September 12, 2016 (ECF No. 47-4); (5) a copy of Plaintiff's March 31, 2017 Article 78 Petition challenging the Commission's Decision and Determination, (ECF No. 47-5); and (6) a copy of Justice Catherine Bartlett's November 6, 2017 Decision and Judgment upholding the Commission's Decision and Determination, (ECF No. 47-6).  Defendants also attached four exhibits to a second attorney declaration, (ECF No. 49):  (1) Plaintiff's Brief to the Appellate Division, dated May 25, 2018 (ECF No. 49-1); (2) Plaintiff's Reply Brief to the Appellate Division, dated July 9, 2018 (ECF No. 49-2); (3) Plaintiff's March 31, 2017 Memorandum of Law to the state trial court in support of her Article 78 Petition, (ECF No. 49-3); and (4) Plaintiff's May 11, 2017 Reply Affirmation to the state trial court, (ECF No. 49-4).  Because the exhibits attached to Defendants' attorney declarations are all pleadings, decisions, or other documents from this lawsuit or prior actions involving the same parties, I may take judicial notice of such documents under Rule 201 of the Federal Rules of Evidence, and will consider the statements the exhibits contain for the fact that they contain them, but "not for the truth of the matters asserted."  *Schubert*, 775 F. Supp. 2d at 698 (cleaned up).

[4] Defendants note that the doctrine of *res judicata*, or claim preclusion, would completely bar this action, including any claims resulting from Plaintiff's firing, but for "the unavailability of damages in a police disciplinary hearing and subsequent Article 78 proceeding."  (Ds' Mem. at 8.)  Damages can be awarded in an Article 78 proceeding only if "incidental to the primary relief sought," N.Y. C.P.L.R. § 7806, and Defendants candidly admit that "'substantial New York authority does indicate that damages for civil rights violations are not included in this category,'" (Ds' Mem. at 8) (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)).  Under New York preclusion law, which applies here, *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) ("To determine the effect of a state court judgment, federal courts . . .  are required to apply the preclusion law of the rendering state.") (cleaned up), where damages claims

A. **Collateral Estoppel**

Collateral estoppel "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).[5]  The doctrine applies when: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). "The party seeking to apply [collateral estoppel] bears the burden of showing that the issues are identical and were necessarily decided in the prior action, and the party opposing its application bears the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues." *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *8 (E.D.N.Y. Mar. 11, 2016) (cleaned up).

1. **Identical to Issues Necessarily Decided**

"Generally, under New York law, collateral estoppel effect will only be given to matters actually litigated and determined in a prior action, because if an issue has not been litigated, there

---

cannot be joined in an Article 78 proceeding as incidental, they are not precluded as *res judicata* even if they arise out of the same operative facts as the Article 78 proceeding.  *See Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 348; *see id.* at 349 ("termination of [a] prior article 78 proceeding on the merits [i]s not res judicata as to the section 1983 damage claims," although the latter claims may be barred by collateral estoppel).  Defendants' position thus appears to be that *res judicata* bars those claims which were or could have been brought in *Edwards I*, but not necessarily those raised in Plaintiff's Article 78 proceeding concerning her termination. Accordingly, Defendants urge the Court to dismiss the Complaint under the doctrine of collateral estoppel, rather than *res judicata*.

[5] As noted in note 4 above, in making a preclusion determination, "a federal court generally is required to consider . . . the law of the State in which the judgment was rendered to determine its preclusive effect." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985); *see Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010).  I therefore apply New York law.

9

is no identity of issues." *Evans*, 469 F.3d at 282 (cleaned up). "[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 667 (1990) (cleaned up). "The prior decision," however, "need not have been explicit on the point, since if by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) (cleaned up).

"Where a plaintiff raises issues such as retaliation and discrimination in an Article 78 proceeding challenging [her] termination, and the state court finds . . . that substantial evidence supports the findings of misconduct and the penalty was not shockingly disproportionate to the conduct, the state court's decision necessarily implies rejection of the plaintiff's claim that [her] termination was discriminatory and retaliatory." *Rigaud v. City of N.Y.*, No. 12-CV-3211, 2018 WL 10087072, *7 (E.D.N.Y. Mar. 30, 2018) (cleaned up). Such a determination "forecloses a similar contention in a subsequent federal action." *Richardson v. City of N.Y.*, No. 97-CV-7676, 2004 WL 325631, at *1 (S.D.N.Y. Feb. 20, 2004).

Plaintiff made several arguments before the Board, and again before the state courts, that gender discrimination, harassment, and retaliation were the actual reasons behind her termination. For example, Plaintiff's Article 78 Petition asserted in its claim for relief that the disciplinary proceedings "failed to give adequate consideration or weight to the mitigating factors present regarding the well-known personal conflict that existed between Khalil and

[Plaintiff], [and] his history of targeting her for discipline." (ECF No. 47-5 ¶ 195.)[6]  The Article

78 Petition included the *Edwards I* Complaint as an exhibit, and separately set forth factual

allegations outlining the discrimination and harassment Plaintiff experienced, which are largely

the same facts that form the basis of this action.  (*See* ECF No. 47-5 ¶¶ 76-115, 142-158, 164,

176-183.)  Plaintiff's memorandum of law to the state trial court noted that at her disciplinary

hearing she "offered a valid explanation for her actions and she was involved in a disagreement

with a sergeant . . . with whom she and other women in the Police Department have faced

ongoing harassment." (ECF No. 49-3 at 4.)

Justice Bartlett, in her decision upholding the Board's determination and denying

Plaintiff's Article 78 Petition, noted that before the Board:

> Petitioner made a number of claims in her defense, including *inter alia* that Sergeant
> Khalil has abused his authority over her, that Chief Bethencourt, Khalil's close friend and
> former business partner, has covered up his abuse; that Khalil does not respect women
> and has engaged in gender discrimination against Petitioner; that Khalil has retaliated
> against her for filing a workplace harassment complaint against him; and that essentially
> everyone – the Chief,  [the] investigators . . . , and the Commission itself – was biased
> against her.

(ECF No. 47-6 at 8.)  She also acknowledged Plaintiff's discrimination allegations numerous

other times in her decision.  (*See id.* at 4, 8-10, 15-16.)  Justice Bartlett nevertheless concluded

that termination was not disproportionate to Plaintiff's conduct and thus that "the Commission

. . . did not abuse its broad discretion in determining matters of police discipline." (ECF No. 47-

6 at 15.)[7]  She further found Plaintiff's "remaining claims" to be "without merit or mooted by the

---

[6] Plaintiff also originally stated in her Petition that the commission's determination was
not supported by "substantial evidence," but she later voluntarily withdrew this claim.  (ECF No.
47-6 at 2.)

[7] Justice Bartlett also rejected Plaintiff's contentions that due process required the recusal
of the commissioners and that the hearing be open to the public.  (ECF No. 47-6 at 15-18.)

court's determination." (*Id.* at 19.)  It is apparent from Justice Bartlett's decision that she

understood and rejected Plaintiff's allegation that her dismissal was a product of discrimination

or retaliation, rather than of her conduct.  *See Parker*, 93 N.Y.2d at 350 (even where state court

focuses mainly on one issue, it follows "its statutory duty to 'dispose of all issues in the

proceeding'" when it holds that all of plaintiff's remaining contentions are without merit)

(quoting N.Y. C.P.L.R. § 7804(g)).

     While the Appellate Division did not explicitly refer to Plaintiff's allegations of

discrimination,[8] Plaintiff's appellate briefing is instructive as to what issues were decided by the

Supreme Court and affirmed by the Appellate Division.  For example, in Plaintiff's reply brief,

she reminded the Appellate Division that she had "repeatedly" argued, both in front of the

Supreme Court and the Commission, that facts tending to show gender discrimination offered a

more likely explanation for her termination.  (ECF No. 49-2 at 19.)  Plaintiff further noted that

her "argument that heightened scrutiny should be applied to the [C]ommission because of the

allegations of gender discrimination has been implicitly argued at each stage of the litigation."

(*Id.* at 20.)

     The Supreme Court's upholding of the Commission's decision "by necessary

implication" rejected the claims of discrimination and retaliation, *BBS Norwalk One, Inc.*, 117

F.3d at 677 (cleaned up), and thus forecloses Plaintiff from seeking damages in federal court for

her allegedly discriminatory termination, *see Dolan v. Roth,* 170 F. App'x. 743, 746-47 (2d Cir.

2006) (summary order) ("[The] state court[] . . . indicated that [it] reviewed [the petitioner's]

---

[8] The Appellate Division found that Plaintiff's termination did not "shock the judicial
conscience," that the Commission had "valid reasons for closing the hearing to the public," and
that Plaintiff's remaining claim was "unpreserved for appellate review."  *Edwards v. City of
Middletown*, 141 N.Y.S.3d 103, 104-05 (App. Div. 2021).

remaining contentions and found them to be without merit.  Subsumed within th[is] holding[]

was the factual determination that defendants did not terminate [the petitioner] based on any of

the impermissible motives described in his pleadings and submissions."); *McGowan v. Schuck*,

No. 12-CV-6557, 2016 WL 4611249, at *10 (W.D.N.Y. Sept. 6, 2016) ("The Court finds . . . that

even though the Article 78 court did not precisely address each of these . . . issues, its

determination that the hearing was 'fair' functions as an actual decision on each of the issues.");

*Rigaud*, 2018 WL 10087072, at *7 ("Where a plaintiff raises issues such as retaliation and

discrimination in an Article 78 proceeding challenging [her] termination, and the state court finds

. . . that substantial evidence supports the findings of misconduct and the penalty was not

shockingly disproportionate to the conduct, the state court's decision necessarily implies

rejection of the plaintiff's claim that [her] termination was discriminatory and retaliatory.")

(cleaned up); *Latino Officers Ass'n v. City of N.Y.,* 253 F.Supp.2d 771, 787 (S.D.N.Y. 2003)

("The state court's determination that the police commissioner's decision to terminate [the

plaintiff] was supported by substantial evidence and that the penalty of dismissal did not 'shock

our sense of fairness,' . . . necessarily implied rejection of [his] claim that his termination was

discriminatory and retaliatory.").

Plaintiff's reliance on *Abdelal v. Kelly*, 726 F. App'x 8, 11 (2d Cir. 2018) (summary

order) is misplaced.  In *Abdelal*, the plaintiff had made only a conclusory reference to

discrimination in his Article 78 papers, and thus it was "not apparent that any issue with respect

to discrimination was 'actually' decided in the Article 78 proceedings."  *Abdelal*, 726 F. App'x

at 11.  Here, in contrast, Plaintiff herself noted to the Appellate Division that she had

"repeatedly" raised her discrimination arguments before the Supreme Court.  (ECF No. 49-2 at

19.)  She included in the Article 78 Petition dozens of paragraphs detailing the same facts she

had alleged in *Edwards I*, making the issue impossible to ignore.  (*See* ECF No. 47-5 ¶¶ 76-115,
142-158, 164, 176-183.)  And the Article 78 court did not ignore it, mentioning it multiple times.
(*See* ECF No. 47-6 at 4, 8-10, 15-16.)  Similarly, her brief to the Appellate Division included a
section summarizing facts that she argued tended to show that gender discrimination and
retaliation were a "[m]ore [l]ikely [c]ause" of her excessive punishment.  (ECF No. 49-1 at 17-
22.)  Additionally, the Plaintiff in *Abdelal* sought damages for the underlying misconduct itself,
which Plaintiff has already been awarded via the judgment in *Edwards I*.

      I therefore find that Defendants have satisfied their burden of showing that the issues in
the instant action and the Article 78 Petition "are identical and were necessarily decided in the
prior action."  *Fequiere*, 2016 WL 1057000, at *8 (cleaned up).

### 2.      Full and Fair Opportunity to Litigate

      "[C]ourts in this Circuit have consistently held that a state court judgment upon an Article
78 petition may preclude a subsequently filed § 1983 action," *Marentette v. City of
Canandaigua*, 351 F.Supp.3d 410, 422 (W.D.N.Y. 2019), and the same is true for Title VII and
comparable state statutory claims, *see, e.g.*, *Cherry v. N.Y.C. Hous. Auth.*, No. 15-CV-6949,
2021 WL 4481004, at *29-30 (E.D.N.Y. Sept. 30, 2021).  "[T]he opportunity to submit an
Article 78 petition gave the plaintiff a full and fair opportunity to litigate [her] claim" because
"the Appellate Division had the benefit of the administrative record, as well as [the] plaintiff's
brief in support of her petition, in which [s]he fully explained [her] procedural claims."  *Bal v.
N.Y.C. Loft Bd.*, No. 00-CV-1112, 2000 WL 890199, at *5 (S.D.N.Y. July 5, 2000).

      Plaintiff presents no argument suggesting that the Article 78 proceeding did not represent
a full and fair opportunity to litigate her discrimination and retaliation claims.  As such, her
claims are subject to collateral estoppel.

### B.   Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this opinion.  Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend *sua sponte.  See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 46), and close the case.

**SO ORDERED.**

Dated:  November 22, 2021
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.